**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LILLIAN DUNMORE, et al., | : | Hon. Joseph H. Rodriguez |
|  | : |  |
| Plaintiffs, | : | Civil Action No. 07-4438 |
|  | : |  |
| v. | : |  |
|  | : | **MEMORANDUM OPINION** |
| FRANKLIN TOWNSHIP, et al., | : | **AND ORDER** |
|  | : |  |
| Defendants. | : |  |
| _____ | : |  |

Plaintiff Lillian Dunmore ("Lillian"), individually and on behalf of her children,

Plaintiffs Joseph Dunmore ("Joseph"), Ryan Dunmore ("Ryan") and Fashon Dunmore

("Fashon")[1], filed a Complaint in this case against, *inter alia*, Franklin Township ("the

Township"), the Franklin Township Police Department ("the Police Department"), and

Chief of Police Michael DiGiorgio ("DiGiorgio") (collectively "Defendants"),

alleging that they violated Plaintiffs' civil rights under 42 U.S.C. §§ 1981 and 1983 and

the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq.

Presently before the Court is Defendants' motion for judgment on the pleadings

under Federal Rule of Civil Procedure 12(c).  For the reasons that follow, the motion is

granted in part and denied in part.

---

[1] Lillian, Joseph, Ryan, and Fashon Dunmore will occasionally be referred to collectively
as "Plaintiffs."

<u>BACKGROUND</u>

According to the Complaint,[2] on or about September 16, 2005, at approximately

8:00 p.m., a Franklin Township police officer "intentionally forcibly slammed" Joseph to

the ground on the football field of Delsea Regional High School.  (Compl. ¶ 16.)

Plaintiffs allege that Joseph was visibly injured at the time of the incident, as he was

wearing a sling on his left arm from a previous injury.  (Compl. ¶¶ 14, 25.)  As a result of

the police encounter, Plaintiffs allege that Joseph sustained two further fractures to his

clavicle and a bridge callus.  (Compl. ¶ 16.)

Plaintiffs further allege that, at the same time and place, several police officers,

without justification or provocation, punched Fashon in her face, knocking a

permanent cap off her tooth.  (Compl. ¶ 17.)  Also, Plaintiffs allege that several police

officers, without justification or provocation, pushed Lillian.

Plaintiffs next allege that an officer arrested Ryan, without probable cause, on the

charge of being loud and abusive toward a police officer.  (Compl. ¶ 19.)  As a result, he

was allegedly held for several hours at the Franklin Township Police Station before being

released into his mother's custody.  (Compl. ¶ 20.)  Further, Plaintiffs allege that the same

officer maliciously prosecuted Ryan for the offense.  Plaintiffs acknowledge, however,

that all charges against him were dismissed.  (Compl. ¶ 22.)

---

[2]The Complaint names several Defendants: the Township, the Police Department, DiGiorgio, several named and unknown Franklin Township police officers, the Board of Education of Delsea Regional School District, and Delsea Regional High School Vice Principal Paul Berardelli.  However, since this motion was filed by only the Township, the Police Department, and DiGiorgio, only the facts and causes of action concerning those Defendants will be discussed.

To redress these alleged civil rights violations, Plaintiffs filed their Complaint on September 14, 2007.  The Complaint raises several causes of action against Defendants: that Defendants' acts and failure to act deprived them of the same rights as accorded to white citizens, in violation of 42 U.S.C. § 1981 (Count Seven; Compl. ¶¶ 40-42); that Defendants failed to adequately screen, train, supervise, and discipline police officer employees to prevent civil rights violations, and failed to investigate and discipline the police officers involved in this incident, in violation of 42 U.S.C. §§ 1981, 1983 (Count Eight; Compl. ¶¶ 43-48); that Defendants' acts and failure to act violated the New Jersey Law Against Discrimination (Count Eleven; Compl. ¶¶ 56-58); that the police officers' actions during the incident in question constituted batteries against the Plaintiffs for which presumably all Defendants are liable (Count Twelve; Compl. ¶¶ 59-61); and that Ryan was falsely arrested and maliciously prosecuted.  (Count Thirteen; Compl. ¶¶ 62-64.)

Defendants answered the Amended Complaint on January 23, 2008.  They filed the instant motion for judgment on the pleadings under Rule 12(c) on March 3, 2008.

## DISCUSSION

### Motion for Judgment on the Pleadings

When considering a motion for judgment on the pleadings under Rule 12(c), a court uses the same standards as when considering a motion to dismiss under Rule 12(b)(6).  Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986).  In doing

so, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Schrob v. Catterson, 948 F.2d 1402 (3d Cir. 1991); Rogin v. Bensalem Twp., 616 F.2d 680, 685 (3d Cir. 1980).  A court may grant the motion only if the moving party establishes that no material issues of fact remain and that it is entitled to judgment as a matter of law.  Shelly, 798 F.2d at 97 n.4.  Plaintiffs opposing a motion for judgment on the pleadings are not required to produce any evidence; rather, the question is "whether [they are] entitled to offer evidence to support [their] claims."  Scheuer v. Rhodes, 416 U.S. 232 (1974).  With this in mind, the Court will consider the claims against each Defendant separately.

Analysis of Defendants' Motion

*A. Claims Against the Police Department*

The Police Department asserts that all claims against it should be dismissed because it is not a proper party that can be sued separately from the Township in this matter.  The Court agrees.

With respect to the section 1981 and 1983 claims, courts have routinely held that a police department is part of the municipality in which it is located, rather than a separate "person" for purposes of actions under 42 U.S.C. § 1983.  See, e.g., PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 825-26 (D.N.J. 1993).  Furthermore, the Third Circuit has held that a claim under 42 U.S.C. § 1983 is the exclusive remedy for alleged violations of rights guaranteed by 42 U.S.C. § 1981.  Oaks v. City of Philadelphia,

59 Fed. Appx. 502, 503 (3d Cir. 2003).  As such, the restriction against suing police

departments in conjunction with municipalities under § 1983 applies to actions brought

under § 1981.

The same analysis applies to the state tort claims and the NJLAD claim.  Under

N.J. Stat. Ann. § 40A:14-118, New Jersey police departments are "an executive and

enforcement function of municipal government."  See, e.g., Godley v. Newark Police

Department, 2007 US Dist. WL 269815, 3 (D.N.J. 2007) (holding that state law tort

claims alleged against the Newark Police Department must be dismissed because police

departments cannot properly be sued in conjunction with municipalities).  Therefore,

Plaintiffs cannot properly sue both the Township and the Police Department.

Moreover, Plaintiffs state in their brief that they do not object to the dismissal of

the Police Department, based on this same  reasoning.  (Plaintiffs' Brief at p. 3.)

For all of these reasons, the Court concludes that all claims against the Police Department

should be dismissed under Federal Rule of Civil Procedure 12(c).

*B. Claims Against DiGiorgio*

Plaintiffs are suing DiGiorgio both in his "official capacity" as Police Chief and in

his "individual capacity."  These claims will be discussed separately.

*1. In His "Official Capacity"*

DiGiorgio argues that all claims against him in his official capacity should be

dismissed because they are essentially redundant, given that the Plaintiffs are also suing

the Township.  "[A]n official capacity suit against a state actor is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the state itself."  <u>Hafer v. Melo</u>, 502 U.S. 21, 26 (1991).  Additionally, Plaintiffs acknowledge the redundancy of suing both DiGiorgio in his official capacity and the Township.  They have stated that they do not object to the dismissal of DiGiorgio in his official capacity because this essentially amounts to a suit against The Township. (Plaintiffs' Brief at p. 3.)  Therefore, the Court concludes that all claims against DiGiorgio in his official capacity will be dismissed under Federal Rule of Civil Procedure 12(c).

 *2. In His "Individual Capacity"*

DiGiorgio also argues that all claims against him in his individual capacity should be dismissed.  Both parties appear to agree that, in order for DiGiorgio to be held liable in his individual capacity under § 1983, he must have had some "personal involvement in the alleged wrongdoing."  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). The  disagreement between the parties lies in what actually constitutes "personal involvement."

Defendants have a more limited view of "personal involvement," essentially arguing that because DiGiorgio was not actually present and did not have knowledge of the incident, he was not "personally involved."  However, as Plaintiffs correctly argue, "actual knowledge of and acquiescence" is only one of two theories adopted by the Third

Circuit for imposing supervisory liability.  Under a second theory of supervisory liability, supervisors can be found liable if they establish and maintain a policy, practice, or custom with deliberate indifference to the consequences, and this directly caused the constitutional harm.  Monell v. Department of Social Services, 436 U.S. 658 (1978); A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d 572 (3d Cir. 2004); Natale v. Camden County Corr. Facility, 318 F.3d 575 (3d Cir. 2003); Stoneking v. Bradford Area School District, 882 F.2d 720 (3d Cir. 1989).

The Complaint alleges that DiGiorgio failed to "adequately screen for employment, train, supervise, and discipline police officer employees, to prevent the instant civil rights violations."  (Compl. ¶ 44.)  Although Defendants argue that these allegations are conclusory and boilerplate, they are sufficient at the pleading stage. Requiring more specificity at this stage would seem to create an unfair burden on the Plaintiffs.  As the court in Carter v. City of Philadelphia explained, "The District Court's insistence that [the Plaintiff] must identify a particular policy and attribute it to a particular policymaker, at the pleading stage without benefit of discovery, is unduly harsh. . . .  He cannot be expected to know, without discovery, exactly what training policies were in place or how they were adopted."  181 F.3d 339 (3d Cir. 1999).

Further, it is reasonable to infer that, implicit in the allegations that DiGiorgio failed in his role as decision maker with respect to the use of force of police officers, is an allegation of "deliberate indifference."  See, e.g., Moleski v. Cheltenham Twp, 2002 US

Dist. WL 32349132 (E.D. Pa. 2002) (declining to dismiss failure to train claim despite Defendants' contention that Plaintiff failed to allege deliberate indifference because "the reasonable inferences drawn from the Complaint's allegations lead the Court to note that a failure to provide training for its officers . . . may well reflect an attitude of deliberate indifference").

For all of these reasons, the Court concludes that the allegations against DiGiorgio in his individual capacity are sufficient at the pleading stage.  As such, Defendants' motion under Federal Rule of Civil Procedure 12(c) is denied with respect to all claims against DiGiorgio in his individual capacity.

## C. Claims Against The Township

Plaintiffs have brought two sets of claims against the Township: claims based on 42 U.S.C. § 1983 and a claim based on the NJLAD.  These will be discussed separately.

### 1. Claims Based on 42 U.S.C. § 1983

The Township's argument that all claims against it under § 1983 should be dismissed appears to be two-fold: (1) a municipality cannot be held vicariously liable for the intentional torts of its employees and (2) the allegations of policy are only "magic words" and are therefore insufficient for purposes of pleading municipal liability under § 1983.  Plaintiffs' arguments against the Township are in all material respects the same as their arguments regarding DiGiorgio in his individual capacity.  Plaintiffs argue that their allegations that the Township, through its Police Chief, failed to "adequately

screen for employment, train, supervise, and discipline police officer employees, to prevent the instant civil rights violation" are sufficient at the pleading stage.

The Township is technically correct in its assertion that, under the New Jersey Tort Claims Act, a municipality is not liable for the intentional torts of its employees, but this is true only in the context of vicarious liability under a theory of respondeat superior. There is, however, another basis for imposing liability on a municipality under § 1983: "when execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. Subsequent case law has also required "deliberate indifference" on the part of the municipality in order to hold the municipality liable for constitutional violations. A.M., 372 F.3d at 580; Stoneking, 882 F.2d at 725.

The same analysis with respect to the § 1983 claims against DiGiorgio in his individual capacity applies here. The Court concludes that Plaintiffs have sufficiently alleged several policies which, if proven, could amount to legally cognizable violations of § 1983. Moreover, it is reasonable to infer from the allegations against the Township an implicit allegation of "deliberate indifference" to the risk that constitutional violations would occur. Therefore, Defendants' motion under Federal Rule of Civil Procedure 12(c) is denied with respect to all § 1983-based claims against the Township.

    *2. Claim Based on the New Jersey Law Against Discrimination*

The Township's argument that the NJLAD claim against it should be dismissed

appears to be two-fold: (1) New Jersey case law suggests that the immunities of the New Jersey Tort Claims Act may apply to NJLAD claims and (2) the Township should not be held strictly liable for the actions of individual police officers.  Plaintiffs argue in response that (1) the New Jersey Tort Claims Act immunities do not apply to NJLAD claims and (2) the Township should be held vicariously liable for the discriminatory acts of police officers just as an employer is held vicariously liable for the abuse of power vested in a supervisor by the employer.

First the Court will consider whether the immunities of the New Jersey Tort Claims Act apply to NJLAD claims.  In support of this proposition, Defendants cite Jobes v. Moorestown Township, 2006 US Dist. WL 3000444 (D.N.J. 2006).  In Jobes, the plaintiffs sought, *inter alia*,  to impose vicarious liability under the NJLAD on Moorestown Township for alleged age discrimination on the part of Moorestown Township police officers.   The court applied certain immunities under the New Jersey Tort Claims Act, specifically good faith immunity and vicarious liability, to the NJLAD claim.  As such, the court held that Moorestown Township was not liable under the NJLAD.  Id.

However, Jobes did not account for other precedent holding that provisions of the Tort Claims Act, including immunities, do not apply to NJLAD claims.  The New Jersey Supreme Court held in Fuchilla v. Layman, 537 A.2d 652 (1988) that the notice provisions of the Tort Claims Act did not apply to NJLAD claims.  The Fuchilla court also noted that

-10-

"the [NJLAD's] implicit emphasis on motive or intent suggests that the Legislature did not intend that the [Tort Claims] Act apply to discrimination claims under the [NJLAD]."  Id. at 660.

Moreover, in Brown v. City of Bordentown, 791 A.2d 1007 (App. Div. 2002), an African American police sergeant brought suit under the NJLAD against the city of Bordentown, alleging racial discrimination in the hiring of a Caucasian as Chief of Police. The Appellate Division addressed the relationship between Tort Claims Act immunities and NJLAD claims:

> [W]e also stress that Title 59 immunities have no bearing on this claim under the LAD.  . . .  Where an employee has acted willfully or intentionally in violation of a comprehensive statutory provision, an employer, officer, or public entity is not necessarily immunized under Title 59.

Id. at 1012.  Therefore, the Court concludes that Tort Claims Act immunities do not apply to NJLAD cases such as the one presently before us.  Therefore, this argument alone will not support the Defendants' 12(c) motion to dismiss the NJLAD claim.

The Court will next consider Defendants' argument that the Township cannot be held vicariously liable for the discriminatory acts of its individual police officers under the NJLAD.  Defendants' argument is essentially that New Jersey law requires "some form of 'fault,' participation, or assistance by the organization." (Defendants' Brief at p. 14.) In support of this proposition, Defendants rely heavily on L.W. v. Toms River Regional Schools Board of Education, 915 A.2d 535, 550 (2007), in which the New Jersey Supreme

Court held that a school district could only be liable for peer-on-peer harassment if it "knew or should have known of the harassment, but failed to take action reasonably calculated to end the harassment."  Defendants argue that this is "certainly a fault-based standard." (Defendants' Brief at p. 16.)

Plaintiffs do not cite to any case law holding that a municipality can be held vicariously liable under the NJLAD for the discriminatory acts of its police officers. Rather, Plaintiffs attempt to draw an analogy to the employment context, in which an employer can be held vicariously liable "when [it] grants a supervisor authority to control the workplace and the supervisor abuses that authority to create a hostile workplace." L.W., 915 A.2d at 548 (citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 464 (1993)).

Plaintiffs' analogy to the employment context is unavailing.  Discriminatory acts of law enforcement officers are considered public accommodation discrimination under the NJLAD.  Ptaszynski v. Uwaname, 853 A.2d 288 (App. Div. 2004).  In Peper v. Princeton University Bd. of Trustees, 389 A.2d 465, 471 (1978),  the New Jersey Supreme Court recognized the important distinction between analyzing public accommodation discrimination claims and employment discrimination claims under the NJLAD.  "The prohibition of discrimination in relation to public accommodation is functionally distinct from the ban on employment discrimination."  Id.  As such, Plaintiffs' analogy to the employment context does not persuade this Court that vicarious liability can be imposed on a municipality for the discriminatory acts of its police officers under the NJLAD.

Moreover, Plaintiffs have not alleged any specific facts which would give rise to liability on the part of the Township under the NJLAD.  For all of these reasons, Defendants' motion to dismiss the NJLAD claim under Federal Rule of Civil Procedure 12(c) is granted.

<u>CONCLUSION</u>

IT IS ORDERED on this 29th day of July, 2008 that Defendants' motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART as set forth above;

That is, the following counts of the Complaint are dismissed: Count Seven, only with respect to the Police Department and DiGiorgio in his official capacity; Count Eight, only with respect to the Police Department and DiGiorgio in his official capacity; Count Eleven; Count Twelve, only with respect to the Police Department and DiGiorgio in his official capacity; and Count Thirteen, only with respect to the Police Department and DiGiorgio in his official capacity.

                                                          /s/ Joseph H. Rodriguez
                                              JOSEPH H. RODRIGUEZ
                                                     U.S.D.J.